IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-41974-TLS |
| | ) | |
| TIERONE CORPORATION, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on September 26, 2012, regarding the motion for order confirming that prior order authorizes insurer to make settlement payments on covered claims filed by creditors Samuel P. Baird, Charles W. Hoskins, James E. McClurg, Campbell R. McConnell, and James R. Strand (Fil. #491), and the motion for order confirming that prior order authorizes insurer to make settlement payments on covered claims filed by creditors James A. Laphen, Gilbert G. Lundstrom, Eugene B. "Gene" Witkowicz, and Ann Lindley Spence (Fil. #494). Brian S. Kruse appeared for Rick D. Lange, the Chapter 7 trustee; Jerry Jensen appeared for the United States Trustee; Kevin McCall and Mike Kelly appeared for Charles Hoskins, Samuel Baird, James McClurg, Campbell McConnell, and James Strand; Robert Bothe and David Mullen appeared for the FDIC; Brian Koenig appeared for Eugene Witkowicz, Gilbert Lundstrom, the Estate of Gale Furnas, David Hartman, Patricia Young, Paula Luther, Larry Pheil, and Roger Ludemann; Angela Boyer appeared for Ann Lindley Spence; Jeffrey Wegner appeared for James Laphen; and Phillip Kim appeared for the Valentino Group. Evidence was admitted and the matter was taken under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

For the reasons discussed below, the motion is granted.

The operative facts are not in dispute. On June 24, 2010, TierOne Corporation filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Rick D. Lange was appointed as the Chapter 7 trustee. At the time of filing, TierOne maintained a $25,000,000.00 tiered-coverage insurance program for its directors and officers. The first layer of coverage in that program is a $10,000,000.00 "SelectOne for Community Banks Blended Policy" issued by the St. Paul Mercury Insurance Co. (n/k/a Travelers Companies, Inc.) which provides aggregate coverage of up to $10,000,000.00 for covered claims.[1] The Policy covers any "Loss" incurred by the directors and officers arising out of, among other things, the acts undertaken by them as directors and/or officers of TierOne and for any act as a fiduciary of TierOne. "Loss" is defined to include "the amount which the insureds become legally obligated to pay on account of each Claim . . . made against them . . . including . . . Defense Costs." Additionally, the policy contains an "Order of

---

[1]There are additional policies that provide coverage in excess of the first $10,000,000.00, but those policies are not at issue at this time. Thus, references herein to the Policy shall mean the policy issued by St. Paul Mercury Insurance Co., n/k/a Travelers Companies, Inc.

Payments Endorsement" which provides that losses related to the claims of the directors and officers are afforded the highest payment priority for claims made under the policy.[2]

The movants are former directors and officers of TierOne Corporation. They are defendants in pending or threatened lawsuits and investigations that allege, among other things, that they are liable for damages arising from actions undertaken in their capacities as officers and/or directors of TierOne, and/or as fiduciaries for certain of TierOne's employee benefit plans, some of which are consolidated in the action *Ray v. TierOne Corporation, et al.*, No. 10-CV-199-JFB (D. Neb.), which has been referred to as the "Securities Lawsuit." Therefore, shortly after TierOne filed bankruptcy, the movants brought a motion for relief from stay[3] asserting that the automatic stay does not apply to the insurer's payment of the policy proceeds in defense of the movants, or if it does apply, seeking the lifting of the automatic stay. After a hearing, this court granted the motion and entered an order (Fil. #207) that provides, in part, as follows:

> The Insurer is authorized to make immediate payments to the Movants, under the Policy, to the extent that the Insurer determines that the payments requested by the Movants constitute covered Claims, including covered Defense Costs, under the terms of the "SelectOne for Community Banks Blended Policy" (the "Policy"). To the extent that it otherwise applied, the automatic stay in this case is lifted and does not prevent the Insurer's payment of covered Claims, including covered Defense Costs, to the Movants . . . .

Recently, the movants have agreed to settle the claims raised in the securities lawsuit. The proposed settlement would release certain claims against TierOne and against the movants by certain TierOne Corporation equity holders in consideration for a payment of $3,100,000.00. The insurer supports the settlement and is willing to make the settlement payments as covered claims under the Policy. The movants brought the pending motions to seek this court's clarification that its prior order granting relief from stay (Fil. #207) authorizes the insurer to make payment to settle covered claims under the policy.

The Chapter 7 trustee and the FDIC as receiver for TierOne Bank both resisted the motion on substantially similar grounds. The trustee initially argues (as he did in response to the initial motion for relief) that the proceeds of the Policy are property of the Debtor's estate since the Policy provides indemnification and liability coverage to the Debtor. However, the trustee acknowledges that the coverage for the Debtor is subordinate to the coverage for the directors and officers. The estate is not entitled to any of the funds under the Policy until the claims against the directors and

---

[2]TierOne itself also has liability coverage under the policy, but all parties agree that payment of the director and officer claims has priority over any right to payment that TierOne may have.

[3]Actually, several motions for relief were filed on behalf of different groups and/or individuals who were directors and/or officers of TierOne. *See* Fil. Nos. 128, 133, 140, 148, 162, and 181.

officers are satisfied; therefore, the issue of whether the policies are property of the bankruptcy estate is irrelevant to the stay relief motion.

The trustee and the FDIC next argue that the settlement payment will completely deplete the coverage available under the Policy,[4] which will eliminate a potential source of recovery for the trustee and the FDIC on their claims against the directors and officers. They seem to be saying that this court should preserve the remaining amounts available under the Policy as a potential source of recovery for claims held by the estate and the FDIC which have not yet been adjudicated. Their argument is akin to a fairness argument – that it would be unfair to let the plaintiffs in the securities litigation receive the Policy proceeds simply because they resolved their litigation faster than the trustee, the FDIC, and other parties having claims against the directors and officers. Specifically, they have no objection to the settlement. Instead, they feel that the securities litigation should be settled, but the payment of the settlement amount should await a determination of what insurance proceeds are available after such time as all claims against the directors and officers are resolved. They further argue that payment to the equity holders involved in the securities litigation will circumvent the priorities set forth in the Bankruptcy Code for payment of claims. Specifically, 11 U.S.C. § 510(d) subordinates claims for damages arising from the purchase or sale of common stock to the same priority as common stock. They believe that the funding of the settlement of the securities action will allow the common stockholders to receive payment of their claims ahead of the other creditors of the Debtor.

For several reasons, the objections are not persuasive. Initially, the objections seem to be based on the premise that this court can control distribution of the Policy proceeds because they are property of the bankruptcy estate. While that may be true since the policies do provide indemnification and liability coverage to the Debtor, it is undisputed that such coverage is subordinate to the payment of covered claims for the directors and officers. The directors and officers are entitled to the Policy proceeds *before* any interest of the estate comes into play. When a liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate. *In re Petters Co.*, 419 B.R. 369, 378 n.10 (Bankr. D. Minn. 2009) (citing *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 672 (Bankr. N.D. Ohio 2005)).

Also, the objections seem to overlook the nature of director and officer policies. "D & O Policies are obtained for the protection of individual directors and officers. . . .  In essence and at its core, a D & O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *Ochs v. Lipson (In re First Cent. Fin'l Corp.),* 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds who are first in line.

---

[4] $6,900,000.00 of the $10,000,000.00 policy has already been paid out in defense costs and the settlement is $3,100,000.00.

Further, it is difficult to comprehend how this court could hold up the payment of benefits under an insurance policy issued for the benefit of non-debtor third parties. The trustee and FDIC may have claims against the directors and officers, but they do not have direct claims against the insurance policy[5] – the directors and officers are the ones making the claim against the Policy. It is not within the purview of this court to interfere with the relationship between an insurer and its non-debtor insured when, as has been determined, there is no property of the estate involved (that is, the estate's interest is subordinate), so whatever resolution the non-debtor parties reach will not affect the bankruptcy estate. 28 U.S.C. § 157(b)(1).

IT IS, THEREFORE, ORDERED that the motions are granted (Fil. #491 and Fil. #494 ). This court's prior order authorizes the insurer to make any and all payments that the insurer determines are covered claims, including defense costs, settlement payments, and/or liabilities. To the extent that the automatic stay otherwise applied, it was lifted by the terms of this court's prior order and does not prevent the insurer's payment of covered claims.

DATED: October 2, 2012.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Brian S. Kruse
    Jerry Jensen
    *J. Kevin McCall/Mike Kelly
    Robert Bothe
    David Mullen
    *Brian Koenig
    Angela Boyer
    Jeffrey Wegner
    Phillip Kim

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[5]As discussed, the court recognizes that the Policy does provide indemnification and liability coverage for the Debtor, but that coverage is subordinate to the claims of the directors and officers.